IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANGELICK TOWNSEND o/b/o M.T.                                          PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:14cv654-FKB

CAROLYN W. COLVIN, COMMISSIONER                          DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

MEMORANDUM OPINION AND ORDER

     This cause is before the Court regarding the appeal by Angelick Townsend of the
Commissioner of Social Security's final decision denying Townsend's application for
Supplemental Security Income ("SSI") benefits on behalf of M.T., a minor claimant. In
rendering this Memorandum Opinion and Order, the Court has carefully reviewed the
Administrative Record [9] regarding Townsend's claims (including the administrative decision,
the medical records and a transcript of the hearing before the Administrative Law Judge
("ALJ")), Plaintiff's Motion for Summary Judgment [10] and supporting Memorandum [11],
Defendant's Motion for an Order Affirming the Commissioner's Decision [12] and supporting
memorandum [13],  Plaintiff's rebuttal brief [14], and Defendant's Surrebuttal [17].

     For the reasons discussed in this Memorandum Opinion and Order, the Court finds that
the Commissioner's decision should be affirmed.  Accordingly, Plaintiff's Motion for Summary
Judgment [10] should be denied, and Defendant's Motion for an Order Affirming the Decision of
the Commissioner [12] should be granted as set forth in this Opinion.

I. FACTS AND PROCEDURAL HISTORY

     Plaintiff, Angelick Townsend, mother of the minor claimant, M.T., filed for

Supplemental Security Income ("SSI") disability benefits on behalf of M.T. on October 6, 2010,

asserting an onset date of October 1, 2010. [9] at 99.[1]   M.T. was born on August 6, 2001, and

was a school-aged child over nine (9) years old at the time of filing.  *Id.*  In the request for

disability, Townsend alleged that M.T. was disabled as of October 1, 2010, because of attention

deficit hyperactivity disorder and asthma.  *Id.* at 67, 121.

The Social Security Administration denied M.T.'s application initially and upon

reconsideration. *Id.* at 64, 71.  Townsend requested a hearing, *id.* at 76, and the ALJ held a

hearing on February 4, 2013, at which Townsend appeared *pro se*, without counsel.  *Id.* at 47.

After considering the record, the ALJ issued an unfavorable decision on June 17, 2013. *Id.* at 25.

At the time of the hearing decision, M.T. was almost twelve (12) years old.  Thereafter, Plaintiff

obtained counsel and appealed the denial to the Appeals Council.  *Id.* at 22 and 24. On July 21,

2014, the Appeals Council denied Townsend's request for review.  *Id.* at 1.  Subsequently,

Townsend filed this action with aid of counsel.  The matter has been briefed and is now ripe for

review.

In her June 2013 decision, the ALJ found that M.T. (the claimant) suffered from the

"severe" impairments of borderline intellectual functioning, attention deficit hyperactivity

disorder ("ADHD"), oppositional defiance disorder, asthma, and diabetes mellitus.  *Id.* at 31.

However, the ALJ determined that neither these impairments nor a combination of these

impairments meet or medically equal the severity of one of the listings under the Listing of

Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  In summary, the ALJ stated that

"[t]he medical evidence of record fails to document clinical findings of any physician that

---

[1]Citations reflect the original pagination of the administrative record.

suggest the claimant's impairments satisfy the severity of requirements of 20 CFR Part 404,
Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and
416.926)." *Id.* The ALJ referenced the medical evidence and findings by Disability
Determination Service medical examiners as a basis for her conclusion that no Listing was met
or equaled. *Id.* In addition, the ALJ stated that she had considered the child's obesity in
reaching the decision. *Id.*

The ALJ proceeded to review the evidence to determine whether M.T.'s impairments or
combination of impairments are functionally equivalent to the severity of the listings. Under 20
C.F.R. § 416.926a, a child whose impairments do not meet or medically equal any listing may,
nevertheless, have limitations that "functionally equal the listings." 20 C.F.R. § 416.926a(a).
To meet this standard, the ALJ considers a child's functions in six different areas or "domains."
20 C.F.R. § 416.926a(b)(1). The domains are acquiring and using information, attending and
completing tasks, interacting and relating with others, moving about and manipulating objects,
caring for yourself, and health and physical well-being. *Id.* To functionally equal the listings, a
child's impairments "must result in 'marked' limitations in two domains of functioning or an
'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).

Pursuant to § 416.926a, the ALJ reviewed the claimant's degree of limitation in each of
the six functional domains, as follows:

A. Acquiring and using information – The ALJ found that M.T. has a less than marked
limitation in this domain. [9] at 34. The ALJ examined school records and concluded that M.T.
is functioning on grade level in regular classes with no serious problems. *Id.* The ALJ observed
that a consultative psychologist, Dr. Stella Brown, made a "provisional" diagnosis of borderline

intellectual functioning based on a full-scale IQ score of 70 on the Wechsler Intelligence Scale for Children – Fourth Edition.  *Id.*  However, the ALJ also pointed out that another consultative psychologist, Dr. Monica Sutton, determined that M.T. had a full-scale IQ score of 83 on the Kaufman Brief Intelligence Test – Second Edition.  *Id.*

    B. Attending and completing tasks – The ALJ found that M.T. has less than marked limitation in this domain after considering conflicting responses from state agency consultants and teacher questionnaires when compared to a treating nurse practitioner's notes.  *Id.* at 35.  The ALJ stated that "[s]tate agency consultants found that the claimant's limitation in this area w[as] less than marked and the "teacher questionnaires indicate no serious limitations in this area."  *Id.*


    C.  Interacting and relating with others – The ALJ found a marked limitation in this domain, citing the opinions of DDS consultants and records.  *Id.* at 36.  The ALJ noted that although M.T.'s symptoms are improved with medication, he still has "significant problems interacting and relating with others; expressing anger appropriately; handling frustration appropriately; being patient; responding appropriately to mood changes, and staying calm."  *Id.*

    D.  Moving about and manipulating objects – The ALJ found no limitation in this domain which considers gross and fine motor skills.  *Id.* at 36-37.

    E.  Caring for yourself – The ALJ found no limitation in M.T.'s ability to care for himself.  *Id.* at 37.

    F.  Health and physical well-being – The ALJ found less than marked limitation in this area.  *Id.* at 38. The ALJ noted that M.T. has been diagnosed with Type II diabetes mellitus and asthma, with occasional coughing and wheezing.  *Id.*  She also noted that treatment records

demonstrate that symptoms are "largely controlled with use of medication" and that M.T. had a normal chest exam in December 2010. *Id.*

Thus, the ALJ found that M.T. had a "marked" limitation in one domain, "less than marked" limitation in three domains, and no limitation in the remaining two domains. Therefore, because the ALJ found that M.T. did not have an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, the ALJ concluded that M.T. has not been disabled since the date the application was filed. *See* 20 C.F.R. § 416.926a(a).

## II.  MEDICAL AND PSYCHOLOGICAL HISTORY

The Court has determined that a detailed recitation of the records is not necessary because the parties summarized M.T.'s records in their briefs, and the ALJ provided thorough summaries in her decision. Nevertheless, a review of the observations and evaluations of certain examiners will aid in the consideration of this case.

Stella W. Brown, Ph.D., performed a psychological evaluation of M.T. on January 28, 2011, when he was age nine years, five months. [9] at 239. During the evaluation, Dr. Brown administered a series of tests to assess M.T.'s intelligence and to observe his behavior. Using the Wechsler Intelligence Scale for Children, Fourth Edition, Dr. Brown gave M.T. a full scale IQ score of 70. *Id.* at 244. Dr. Brown noted M.T.'s "obesity, asthma, breathing problem, weak left eye, and need for corrective lenses, by history." *Id.* at 247. Dr. Brown concluded that M.T. had "some form of depression and a Depressive Disorder not otherwise specified" as a provisional diagnosis, and a rule out "Major Depressive Disorder, single episode, mild to moderate" was suggested. *Id.* The psychologist also found that "the client has some rather

bizarre behavior and a rule out on a Psychotic Disorder is suggested, as well as consideration of Borderline Intellectual Functioning and a Learning Disorder not otherwise specified relative to weaknesses for achievement skills assessed." *Id.*

Monica J. Sutton, Ph.D., conducted psychological evaluations of M.T. on two different occasions, on November 28, 2011, when M.T. was age ten years, three months, and on November 29, 2012, when M.T. was age eleven years, three months. *Id.* at 328-335; 239-248. At each evaluation, M.T. achieved a composite IQ of a standard score of 83, with a confidence interval of 77-91 using the Kaufman Brief Intelligence Test, Second Edition. *Id.* at 328, 334. Based on her evaluation, Dr. Sutton concluded in 2011 that M.T. had:

1.  Probable Mood Disorder, Not otherwise specified;

2.  History of ADHD;

3.  Below Average Intellectual Functioning; and

4.  Below Average Academic Achievement.

*Id.* at 335.  In 2012, Dr. Sutton concluded that M.T. had:

1.  Attention Deficit Hyperactivity Disorder, by history;

2.  Mood Disorder, Not otherwise specified;

3.  Probable Anxiety Disorder;

4.  Below average intellectual functioning;

5.  Below average academic achievement in math problem solving and word reading; and

6.  Average achievement in reading comprehension and numerical operations.

*Id.* at 330.  Considering these results, Dr. Sutton recommended that M.T. continue his current

academic placement and consider consultation with a medical doctor to "address mood and anxiety problems" for his "frequent anger outbursts." *Id.* Dr. Sutton also recommended that M.T. seek mental health services "for standard intervention to address anger issues, disturbance of mood and anxiety symptoms[,]" and "[p]sychological follow-up, as needed." *Id.*

### III. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is: "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

To be sure, a disability claimant has the burden of proving that his condition meets or equals a listing, and he or she must manifest all of the specified criteria of a particular listing to meet this burden. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled.

Nevertheless, pursuant to 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence offered in support of [the claimant's] claim for disability and to explain why she found [the claimant] not to be disabled" at a particular step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). A bare and summary conclusion that Plaintiff does not meet or equal a listing is "beyond meaningful judicial review." *Id.* However, the ALJ is "not always required to do an exhaustive point-by-point discussion." *Id.* Nevertheless, when the ALJ offers nothing to support her conclusion, "a reviewing court[] simply cannot tell whether her decision is based on substantial evidence or not." *Id.* (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

<u>Special Considerations for Childhood Disability</u>

Social Security Administration procedures for determining childhood disability require "a three-step process, under which the [ALJ] . . . must determine (1) that the child is not engaged in substantial gainful activity; (2) that the child has an impairment or combination of impairments that is severe; and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. § 404." *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 84 (2d Cir. 2003). "In making the third determination—whether a child's impairment meets or equals a listed impairment—the ALJ must consider whether the

-8-

impairment, alone or in combination with another impairment, medically equals, or functionally equals" an impairment listed in Appendix 1, Subpart P, of Social Security Regulation No. 4 (the "Listings"). *Id. See also* 20 C.F.R. § 416.924 (2010). As stated above, to evaluate functional equivalence, "[t]he ALJ considers how a child functions in his activities 'in terms of six domains': '(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being.'" *Id.* (quoting 20 C.F.R. § 416.926a(b)(1)). "The regulations provide that a child must be found to be disabled if he or she has an impairment or impairments of 'listing-level severity,' that is, an 'extreme' limitation in one of these domains, or 'marked' limitations in two or more domains." *Id.* (quoting 20 C.F.R. § 416.926a(a)).

<u>IV. DISCUSSION OF THE ALLEGED ERRORS<br> AND APPLICABLE LAW</u>

Plaintiff argues that the ALJ's decision should be reversed because the ALJ's finding that the child does not meet the criteria of Listing § 112.05(D), Intellectual Disability, is not supported by substantial evidence.  Plaintiff argues that the ALJ erred when she did not specifically discuss whether M.T.'s impairments meet the requirements of Listing § 112.05(D) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  Alternatively, Townsend argues that the ALJ's failure to evaluate specifically M.T.'s condition under Listing § 112.05(D) results in the ALJ's decision being "beyond meaningful judicial review," that she suffered prejudice thereby, and, accordingly, the case should be remanded for further consideration and analysis of M.T.'s condition under Listing § 112.05(D).

To meet or medically equal Listing § 112.05(D), a claimant's impairment must satisfy the "diagnostic description in the introductory paragraph" (sometimes referred to as the "capsule

definition") of Listing § 112.05, and the criteria set forth in § 112.05(D). 20 C.F.R. Part 404,

Subpart P, Appendix 1, § 112.00. "[E]very mental disorder listing includes two independent

components: a diagnostic description of the disorder and specific criteria measuring the

disorder's severity." *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009).  The capsule

definition of Listing § 112.05 and the specific criteria of Listing § 112.05(D) state, as follows:

> **112.05 *Intellectual disability:*** Characterized by significantly subaverage general
> intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A,
> B, C, D, E, or F are satisfied. . . .
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical
> or other mental impairment imposing an additional and significant limitation of
> function. . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05.  As stated above, "[f]or a claimant to show

that his impairment matches a listing, it must meet *all* of the specified medical criteria. An

impairment that manifests only some of those criteria, no matter how severely, does not qualify."

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)(emphasis in original).

A.  Did the ALJ provide analysis adequate for "meaningful judicial review"?

As an initial matter, the Court explores whether the ALJ's decision at step three is

adequate for "meaningful judicial review."  Although the ALJ is not required to do an exhaustive

point-by-point discussion, the ALJ did provide some discussion of M.T.'s conditions as they

related to the Listings.  Even though the ALJ did not specifically compare M.T.'s conditions

with the requirements of § 112.05(D), the ALJ mentioned the lack of medical evidence of record

documenting that M.T. satisfied the severity requirements of the Listings and the lack of findings

by a physician that equated to the severity of the Listings.  The ALJ pointed out that Disability

Determination Service medical examiners had also concluded that no Listing was met or equaled. Although the ALJ did not provide exhaustive and detailed analysis, there is sufficient explanation that demonstrates to the Court that the ALJ, after reviewing the record and opinions within it, considered the Listings and determined that no Listings were met.

Even so, an ALJ's failure to adequately explain her finding at this stage does not require remand, unless it affects the claimant's substantial rights. *Audler*, 501 F.3d at 448. Plaintiff's substantial rights are affected if she meets her burden of demonstrating that M.T. appeared to meet the Listing requirements for § 112.05(D). *Id.* at 448-449. As discussed in the following paragraphs, there is substantial evidence in the existing record to support the ALJ's finding that M.T.'s impairments do not meet the Listing requirements of § 112.05(D) based on the documentation of M.T.'s testings, examinations, school records, and medical records.

### B. Did M.T. have "significantly subaverage general intellectual functioning with deficits in adaptive functioning"?

The first portion of Listing § 112.05, whether the claimant has "significantly subaverage general intellectual functioning with deficits in adaptive functioning," is also referred to as the "capsule definition." This component of Listing § 112.05 is the diagnostic description of the Listing. In order to meet the Listing's criteria, a claimant's conditions must meet this portion of the Listing, as well as the criteria in subsection D.

Plaintiff does not separately argue that M.T. suffers from "significantly subaverage general intellectual functioning," but, instead, focuses her argument regarding mental impairment on the Subsection D portion of the criteria. Accordingly, the Court will address that aspect of Plaintiff's argument in the context of Subsection D. Nevertheless, the Court observes

-11-

that no examining or treating physician ever diagnosed M.T. with mental retardation.  While Dr. Brown made a provisional diagnosis of borderline intellectual functioning, [9] at 247, Dr. Sutton diagnosed M.T. with below average intellectual functioning on two different occasions.  *Id.* at 330, 335.  In the Fifth Circuit, below average intelligence alone does not constitute a severe mental impairment.  *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Thus, it would appear that M.T. does not meet this part of the capsule definition of Listing § 112.05.

As evidence that M.T. satisfies the "deficits in adaptive functioning" portion of the Listing, Plaintiff asserts that M.T. has historically had problems and conflicts with peers, he tends to isolate himself, and he tends to lash out in anger when his preferred daily activities are disturbed.   Plaintiff also referenced M.T.'s attempt to squeeze his younger sister's head on one occasion and an incident in which he returned with a hammer after an argument with his brother. [11] at 12.  Plaintiff points out that, in the context of the ALJ's evaluation of functional equivalency, the ALJ found that M.T. had a marked limitation in the area of interacting and relating with others.  Thus, Plaintiff submits this evidence demonstrates the existence of adaptive problems academically and socially sufficient to meet this element of Listing § 112.05.

While the ALJ found that M.T. had a marked limitation in the area of interacting and relating with others, the ALJ did not find a marked limitation in any of the remaining five domains.   The ALJ found a less than marked limitation in the domain of acquiring and using information, less than marked limitation in the domain of attending and completing tasks, and less than marked limitation in the domain of health and physical well-being.  The ALJ found no limitations in the domains of caring for yourself, as well as moving about and manipulating objects.

The Court has undertaken a thorough review of M.T.'s teacher assessments, educational records, mental health records, and medical records as presented in the administrative record. Although there may be conflicting evidence regarding the claimant's functional limitations in the six domains, it is not the role of this Court to re-weigh the evidence or substitute its judgment for that of the Commissioner.  The educational and mental health records demonstrate that although M.T. had certain issues related to his ability to manage his anger and relate to others, he had undergone counseling in this regard. [9] at 283-285, 287-293. His counselor noted that he was cooperative, was of average intelligence, and worked with him on ways to manage his anger and improve his coping skills.  Accordingly, the undersigned finds that there is substantial evidence in the record to support the ALJ's decision that M.T. does not meet the capsule definition of Listing § 112.05.

C.  Did M.T. have a "valid verbal, performance, or full scale IQ of 60 through 70"?

Plaintiff argues that the ALJ should have found that M.T. met Listing § 112.05(D) based on Dr. Brown's evaluation in January 2011, when M.T. was age nine years, five months. [9] at 239.  In that evaluation, Dr. Brown concluded that M.T. had a full scale IQ of 70 based on the Weschler Intelligence Scale for Children - Fourth Edition.  *Id.* at 244.

However, more recent testing yielded higher IQ test scores for Plaintiff's child, indicating that M.T.'s condition had improved.  *See Gallow ex rel. Gallow v. Secretary of Health & Human Servs.*, 1994 WL 772970, at *4 (W.D. La. Oct. 28, 1994).  Using the Kaufman Brief Intelligence Test-Second Edition, Dr. Sutton tested M.T. at ages ten and eleven, in November 2011 and 2012, and determined that M.T.'s Composite IQ score was 83 on both occasions.  *Id.* at 329, 334.  In November 2011, M.T. achieved a Verbal IQ score of 91, a Nonverbal IQ score of 79, and a

-13-

Composite IQ score of 83.  *Id.* at 329.  In November 2012, M.T. achieved a Verbal IQ score of 89, a Nonverbal IQ score of 81, and a Composite IQ score of 83.  *Id.* at 334.  Dr. Sutton concluded that M.T. has "below average intellectual functioning," which is not, on its face, a severe mental impairment.  *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

Moreover, at the time of the February 2013 hearing and the ALJ's June 2013 decision, Dr. Brown's January 2011 assessment was no longer considered current under the regulations. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00(D)(10)("IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above.").  "IQ test results must also be sufficiently current for accurate assessment under [§] 112.05."  *Id.*

Accordingly, because M.T. scored 83 on two IQ tests considered "current" under the Regulations, Plaintiff has failed to show that the claimant meets the criteria of subsection D in that he does not have a "valid verbal, performance, or full scale IQ of 60 through 70."  Although Plaintiff urges the Court to relax the criteria and consider M.T.'s January 2011 score as current, the regulations do not provide for an extension of the two-year time period for validity of IQ testing.  Instead, at the time of the hearing and the decision, M.T. had scored an 83 on two other IQ tests that under the regulations were "current," an essential component of "accurate assessment" under the Listing.  Thus, substantial evidence in the record supports the ALJ's decision that claimant does not meet the Listing.

Having found that Plaintiff has failed to show that the claimant meets the capsule definition or the IQ requirement of Listing § 112.05(D), it is unnecessary to address whether claimant meets the other requirements of the Listing.  Moreover, because a review of the records shows that there is substantial evidence in the record demonstrating that M.T. did not meet the

requirements of Listing § 112.05(D), the ALJ's failure to consider specifically this Listing was, at most, harmless error. *Audler*, 501 F.3d at 448.  As such, the ALJ's decision is conclusive and must be upheld.

## V. CONCLUSION

In sum, the undersigned finds that Plaintiff's Motion for Summary Judgment [10] should be denied, and Defendant's Motion for an Order Affirming the Decision of the Commissioner [12] should be granted.  Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a separate judgment will be entered.

SO ORDERED, this the 31st day of March, 2016.

 /s/ F. Keith Ball                                            
UNITED STATES MAGISTRATE JUDGE